# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

NATALY CANO LOPEZ, on behalf of
herself and all others similarly situated,

        Plaintiff,

v.

MIAMI-DADE COUNTY; and SYSTEM
INNOVATORS, INC.,

        Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Nataly Cano Lopez, individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to herself, on the investigation of her counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demands trial by jury:

## NATURE OF ACTION

1.      Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of the Defendants in willfully violating section 1681c(g) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.,* (hereinafter "FCRA"), also known as the Fair and Accurate Credit Transactions Act ("FACTA").

2.      Defendant System Innovators, Inc. ("System Innovators"), a Jacksonville, Florida based subsidiary of Harris Computer Systems, Inc., develops and implements online cashiering and collections systems for local government agencies and utility companies across the United States. One of System Innovators's offerings is iNovah, a browser-based software package that manages payment

collection and processing activities such as cashiering, payment balancing, payment administration, and payment reporting.

3.     Defendant Miami-Dade County uses System Innovators's iNovah software package for collecting credit and debit card payments for, *inter alia*, parking citations and court filing fees, and for printing receipts for such payments at the point of sale or transaction.

4.     FACTA, which was designed to combat the rising tide of identity theft experienced throughout the nation in recent years, requires entities that accept credit and debit cards to truncate the card number and expiration date information printed on sales receipts.  Specifically, FACTA prohibits merchants such as Defendants, from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.  These requirements, if followed, reduce an identity thief's ability to obtain valuable account information relating to a consumer.

5.     Since at least 2006, FACTA's requirements have been widely disseminated to merchants by entities such as Visa, Inc., Mastercard Worldwide, Discover Financial Services, and the Payment Card Industry Security Standards Council, among many others.  These entities notified merchants, including the Defendants, that FACTA prohibited the printing of more than the last five digits of the credit/debt card number and/or the expiration dates associated with the credit/debit card account on receipts.

6.     Despite having had direct notice of the requirements of FACTA for nearly a decade, Defendants recklessly ignored and failed to comply with FACTA's truncation requirement by printing more than the last five digits of the card numbers on receipts provided to Plaintiff and all other cardholders, uniformly burdening each of them with an elevated risk of identity theft.

7.     Plaintiff seeks national class-wide statutory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems proper, for the willful violations of FACTA committed by Defendants.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Miami-Dade County is located entirely within this District and does business in this District, and because System Innovators is a corporation that is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.   System Innovators's contacts with this District, including operating payment collection and processing systems in this District and printing receipts in this District, are sufficient to subject it to personal jurisdiction in this District.

## PARTIES

10.     Plaintiff is an individual and, at all times mentioned herein, was a "consumer" as defined by 15 U.S.C. § 1681a(c) (defining "consumer" as "an individual").  Plaintiff is and was at all times mentioned herein a citizen and resident of Miami, Florida.

11.     System Innovators is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Florida and whose primary corporate headquarters is in Jacksonville, Florida.  System Innovators's iNovah system accepts and processes credit cards, at the point of sale or transaction, for various entities transacting business across the country.  Accordingly, System Innovators is, and at all times mentioned herein was, a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

12.     Miami-Dade County is, and at all times mentioned herein was, a government entity located within the State of Florida.  Miami-Dade County uses System Innovators's iNovah system at the point of sale or transaction to accept credit cards and debit cards for the collection of fees associated with various government services, such as court filing fees and parking ticket payments. Accordingly, Miami-Dade County is, and at all times mentioned herein was, a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.  *See* 15 U.S.C. § 1681a(b) (defining "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, *government or governmental subdivision or agency,* or other entity" (emphasis added)).

## FACTUAL BACKGROUND

### I.     Printing Receipts That Contain Excessive Credit Card Information Implicates Consumer Privacy Concerns

13.     The Federal Trade Commission has estimated that, each year, criminals fraudulently assume the identities of more than 9 million persons for financial gain causing losses in excess of $50 billion.

14.     Identity thieves, commonly referred to as "carders" or "dumpster divers," obtain credit card numbers and engage in fraudulent transactions by obtaining credit card receipts that are stolen, lost, or discarded.  Such "low tech" methods are more prevalent than the use of sophisticated electronic hacking to obtain credit card information.  *See, e.g.,* Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

15.     Truncation standards, including the standards reflected in credit card companies' merchant rules and in FACTA, permit the publication of the last five digits of customer account numbers on the receipt presented to customers at the point of sale.  The publication of this minimal

amount of account information is sufficient to facilitate merchant account reconciliation and processing of returns, among other legitimate tasks, while also significantly limiting the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

16.     Each of the numbers on credit and debit cards have important significance reflecting an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips.  Consistent with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) a number unique to the card; and (d) a check digit.

17.     The MII identifies the industry of the issuer of the card.  The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.  The seventh through next to the last digits, up to a maximum of 12 digits, are the numbers unique to the card.  The last digit is a "check digit" that is not randomly assigned, but instead calculated by a defined algorithm.  Therefore, the "check digit" is derivative of the other numbers in the credit card number.

18.     Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers if the truncation provisions of FACTA are not complied with.  Indeed, the more information that is disclosed on a receipt, the easier it is to pilfer additional confidential information.

## II.     The Fair and Accurate Credit Transactions Act

19.     In December 2003, in an effort to curb this means of identity theft, Congress enacted FACTA.

20.     One FACTA provision in particular was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or debit account from a receipt which the consumer discarded or lost:

> Except as otherwise provided in this subsection, no person that accepts credit or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g) (the "Receipt Provision").

21.     Because receipts are often lost or thrown out and then retrieved by malicious "dumpster divers" for purposes of stealing a cardholder's credit card information, Congress designed the Receipt Provision to ensure that receipts provide just enough data for the legitimate use of the cardholder and business, without giving away critical identifying information that could compromise the cardholder's account.  *51 A.L.R. Fed.2d 273*

22.     Any "person who willfully fails to comply with any requirement imposed under [FACTA] with respect to any consumer is liable to that consumer in an amount equal to 1) statutory damages of not less than $100 and not more than $1,000; 2) punitive damages; and 3) attorney fees and costs."  15 U.S.C.  §  1681n(a).

23.     FACTA provided two compliance deadlines: (1) Machines brought into use before January 1, 2005 must have been brought into full compliance before December 4, 2006; and (2) machines first used after January 1, 2005 were required to fully comply immediately.

### III.     Defendants Have Been on Notice of the Fair and Accurate Credit Transactions Act Since As Early as 2003

24.     In anticipation of FACTA's December 4, 2006 compliance deadline, many credit card companies, including VISA and MasterCard, notified merchants, including the Defendants, of the Receipt Provision, and implemented policies for themselves and merchants accepting their cards to ensure universal compliance with the Receipt Provision.

25.     For example, on March 6, 2003, VISA's CEO, Carl Pascarella, held a press conference on Capitol Hill with Senators Dianne Feinstein, Judd Gregg, Jon Corzine and Patrick Leahy and

publicly announced to the world VISA USA's new truncation policy to protect consumers from identity theft. Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether…. The first phase of this new policy goes into effect July 1, 2003 for all new terminals…." *Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference with Sen. Dianne Feinstein*, PR Newswire, March 6, 2003. Within 24 hours, MasterCard and American Express announced that they were imposing similar requirements.

26.     On July 9, 2003, L. Richard Fischer of VISA USA presented a statement to the House Committee on Financial Services in support of the truncation requirements, which "would prohibit any merchant or other entity that accepts credit cards and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale."

27.     The August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), distributed to and binding upon all merchants accepting Visa cards, expressly required that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed and could not be printed on receipts. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

28.     Defendants here accept Visa cards and are parties to a contract requiring compliance with the above-quoted requirement pursuant to the Rules for Visa Merchants.

29.     These requirements and the requirements of FACTA were widely publicized. The following examples are illustrative.

30.     In May of 2007 the Federal Trade Commission ("FTC") issued an FTC Business Alert titled "Slip Showing Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts" ("Alert"). The Alert explicitly stated: "You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT: ***********12345;; EXP: ****"

The Alert went on to state: "Why is it important for businesses to comply with this law? In addition, the law allows consumers to sue businesses that don't comply and to collect damages and attorney fees."

31.     The Office of Thrift Supervision of the Treasury Department (the "OTS") is responsible for, *inter alia*, compliance with FACTA by federal savings banks.  Toward this end, the OTS publishes an Examination Handbook for OTS field personnel to use when they perform an examination, or compliance audit, of a given financial institution.  The February 2006 edition of the Handbook states:

**Truncation of Credit and Debit Card Account Numbers**
Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

32.     Commerce Bank, another credit card processor, sent "Merchant Compliance Awareness" notices to its customers during 2004.  Those notices stated that all but the last four digits of the cardholder's account number and the entire expiration date must be suppressed from and not displayed on the receipt.

33.     In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

-8-

> [A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft.

34.     In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation stating:

> [T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003. Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals….

35.     The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding FACTA's truncation requirements and including the following language:

> [A]ccording to the FACTA Act, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction….

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

36.     In its February/March 2005 Newsletter, the Virginia Retail Merchants Association reported that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

## IV.     Defendants Violated the Fair and Accurate Credit Transactions Act

37.     Defendants accept credit cards and debit cards in the course of transacting business with persons such as Plaintiff and the other class members. In transacting such business, Defendants

use cash registers or other machines or devices that electronically print receipts for credit and debit card transactions.

38.     After the effective date of FACTA, Defendants provided credit and debit card paying consumers, including Plaintiff and each class member, with one or more electronically-printed receipts at the point of sale or transaction that failed to comply with the Receipt Provision's truncation requirement.  Specifically, Defendants provided each credit or debit card-paying consumer, including Plaintiff and each class member, a receipt(s) displaying more than the last five (5) digits of the credit or debit card number.  In fact, the receipts provided by Defendants contain the first six (6) and last four (4) digits of a credit/debit card number.

39.     The first six digits revealed by Defendants' receipts represent the IIN, which identifies the specific issuer of the card.

40.     Defendants had actual knowledge of, and/or recklessly or willfully ignored, FACTA's truncation requirement from the various notices and written requirements imposed by VISA, Mastercard, and other entities regarding the redaction of credit and debit card data.

41.     Defendants demonstrably had actual knowledge of FACTA's truncation requirement because they truncated some of the information from the cardholder's receipt but failed to redact all but the last five (5) card numbers.  On information and belief, Defendants willfully failed to redact the IIN (the first six digits), in violation of FACTA, because the IIN allowed Defendants to sort payments by card issuers and thus helped streamline internal accounting.

**V.     Plaintiff Nataly Cano Lopez's Experience**

42.     On July 27, 2015, eleven (11) years after FACTA's truncation requirement went into effect, and eight (8) years after the final deadline for compliance, Plaintiff engaged in a credit card transaction with the Defendants to pay a parking citation at a brick and mortar location operated by Miami-Dade County.

43.     At the conclusion of her credit card transaction on July 27, 2015, Plaintiff received from Defendants a computer-generated, printed receipt displaying more than five (5) digits of her Visa credit card number.  Specifically, Plaintiff's printed receipt included the first six (6) digits and last four (4) digits, for a total of ten (10) digits, of her Visa credit card number.  A copy of the electronically generated receipt provided by the Defendant to Plaintiff is attached hereto as Exhibit A.

44.     Defendants invaded Plaintiff's statutorily protected right of privacy by printing and publishing her protected, private information on a receipt and by permitting Defendants' employees access to that private information.

45.     As discussed below, Defendants similarly violated the FACTA-protected privacy rights of the other class members in the same uniform way.

## CLASS ALLEGATIONS

46.     <u>Class Definition</u>.  Plaintiff brings this nationwide civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23.  The "Class" that Plaintiff seeks to represent is comprised of and defined as follows:

> All persons in the United States to whom Defendants provided an electronically-printed receipt at the point of a sale or transaction after the applicable statutory deadline (after December 4, 2006 for machines in use before January 1, 2005 or immediately for machines first used after January 1, 2005) and which receipt displayed either (a) more than the last five digits of the purchaser's credit card or debit card number, or (b) the expiration date of the purchaser's credit card or debit card, or (c) both.

47.     Defendants, their employees, and agents are excluded from the Class.

48.     Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

49.     Plaintiff and all Class members have been impacted and harmed by the acts of Defendants and/or their affiliates or subsidiaries.

50.     This Class Action Complaint seeks money damages and injunctive relief.

51.     This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the ascertainability, numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

52.     Upon application by Plaintiffs' counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of ascertainability, manageability, justice and/or judicial economy.

53.     Ascertainability. This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed Class are clearly and easily ascertainable and identifiable. The members of the Class can be readily ascertained from Defendants' records, database files and/or business records maintained by Defendants and/or their agents, affiliates, and subsidiaries. The Class members can be readily located and notified of this class action.

54.     Numerosity. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

55.     Typicality. Plaintiff and each class member received at least one electronically-printed receipt displaying more than five (5) digits of a credit card or debit card number or an expiration date. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interest is consistent with and not antagonistic to those of the other Class members she

seeks to represent.  Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations and/or misconduct as alleged herein.

56.   <u>Adequacy</u>.  As Class representative, the Plaintiff has no interests that are adverse to, or which conflict with, the interests of the absent members of the Class and is able to fairly and adequately represent and protect the interests of such a Class.  Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

57.   <u>Competency of Class Counsel</u>.   Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this class action. These counsel are experienced in handling complex class action claims.

58.   <u>Commonality and Predominance</u>.  There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

a.   Whether Defendants printed sales or transaction receipts truncated credit or debit card numbers and credit or debit card expiration dates as FACTA required;

b.   When Defendants put its credit and debit card machines into service;

c.   Whether Defendants had a practice of providing customers sales or transaction receipts that failed to comply with FACTA's truncation requirement;

d.   Whether Defendants violated FACTA;

e.   Whether Defendants' conduct was willful and/or reckless; and

f.   What amount of statutory damages the Court should order Defendants to pay;

59.   Superiority.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.   Even if every member of the Class could afford to pursue individual litigation, the Court system could not.   It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class.   Plaintiff anticipates no difficulty in the management of this action as a class action.   Class wide relief is essential to compel compliance with FACTA.   The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of FACTA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims.

60.   Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or that would substantially impair or impede the ability of such nonparty Class members to protect their interests.  The prosecution of individual actions by Class members could establish inconsistent results and result in establishing incompatible standards of conduct for Defendants.

61.   Defendants and/or affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding

declaratory relief with respect to the Class as a whole appropriate.  Moreover, on information and belief, Plaintiff alleges that the FACTA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIM FOR RELIEF

**WILLFUL VIOLATION OF THE FAIR AND**
**ACCURATE CREDIT TRANSACTIONS ACT,**
**15 U.S.C. § 1681(c)g**

62.     Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

63.     Defendants willfully and/or recklessly violated FACTA by using cash registers or other machines or devices that printed receipts for the Plaintiff and the putative Class members in violation of the Receipt Provision of FACTA.

64.     Defendants are liable to Plaintiff and the other class members for, among other things, "damages of not less than $100 and not more than $1,000."  15 U.S.C. § 1681n(a).

65.     Plaintiff and all Class members are also entitled to, and therefore seek, injunctive relief prohibiting the Defendants from violating FACTA in the future.

66.     Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment for herself and each member of the Class as follows:

a)     Statutory damages in the amount of $1,000 for each and every willful violation of FACTA;

b)     Punitive damages;

c)     Injunctive relief prohibiting future violations of FACTA;

d)     Reasonable attorneys' fees;

-15-

e)        Costs of suit;

f)        An Order certifying this action pursuant to Federal Rule of Civil Procedure 23, establishing a Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as Class Counsel; and

f)        Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.


Dated:  August 5, 2015                          Respectfully submitted,

                                                By: /s/  Frank S. Hedin_____

                                                **CAREY RODRIGUEZ
                                                MILIAN GONYA, LLP**

                                                David P. Milian
                                                Florida Bar No. 844421
                                                dmilian@careyrodriguez.com
                                                Frank S. Hedin
                                                Florida Bar No. 109698
                                                fhedin@careyrodriguez.com
                                                1395 Brickell Avenue, Suite 700
                                                Miami, Florida 33131
                                                Telephone: (305) 372-7474
                                                Facsimile:  (305) 372-7475

                                                *Attorneys for Plaintiff*